PAUL RODE, L. S. Officer, S. A. Olsen, Tom Plaisance, and Fred Shieve, Appellants and Respondents, v. STATE HIGHWAY COMMISSION of the State of North Dakota, a Corporation, and Walter Maddock, Ray Ashley, and I. J. Moe, as State Highway Commissioners, the County of Ward, a Quasi-Municipal Corporation, August Krantz, L. G. Theurer, L. W. Toftner, Alf Haldi, and F. G. Kilbourn, as County Commissioners of Said Ward County, Respondents and Appellants.

(225 N. W. 801.)

Opinion filed June 5, 1929.

*L. J. Palda, Jr., Robert W. Palda, C. E. Brace* and *H. E. Miller,* for appellants.

*James Morris,* Attorney General, *Harold D. Shaft,* Assistant At-

torney General, and *Halvor Halvorson,* for respondent State Highway Commission. *Dickinson* and *Johnson,* for respondent Ward County.

BURR, J. The plaintiffs seek to enjoin the state highway commission and the board of county commissioners of Ward county from proceeding with the construction of a certain highway. The trial court decided that under the facts in this case if the state highway commission intends to construct the highway and charge Ward county with a part of the cost of construction and board of county commissioners of Ward county intends to provide county funds for the building and improvement of the highway in question, so that any part of the improvement would be charged to Ward county the defendants should be enjoined; but if the state highway commission intends to construct the highway without expense to Ward county then no injunction should issue, and an order in conformity with this decision was made.

The plaintiffs appeal from that part of the order of the trial court refusing to enjoin the state highway commission if no expense should be charged to Ward county; and the defendant state highway commission appeals from the order allowing injunction in case a portion of the expense was to be charged to Ward county.

The case involves the construction of chapter 159 of the Session Laws of 1927 relative to the powers and duties of the department of state highways and the county commissioners of the counties of the state in the matter of state highways.

The facts are practically undisputed. As early as 1927 the state highway commission, in planning a state highway system under the laws then in existence, blazed state highway No. 23 known as the Parks Highway, beginning at the Red River opposite Halstad in Minnesota and running in a westerly and slightly northwesterly direction across the state and through the southern portions of Ward and Mountrail counties. In November 1927 the board of county commissioners of

Ward county, under the provisions of § 22 of this law made written application, to the department for the "improvement and construction under the conditions of such act," of that portion of the highway which would run through the southern part of Ward county and described, as the portion to be improved, the strip beginning at a point where highway 23 intersects highway 6 and running due west to the village of Ryder and westward to the Mountrail county line in said Ward county, or as the complaint states:

"Being more particularly described as commencing at the point where sections 3 and 4, 9 and 10, of township 151, range 83, in said Ward county, meet, thence due west on the section line to the point where sections 3 and 4, 9 and 10 of township 151, range 87, in said Ward county, meet, thence due north on the section line, two miles to the point where sections 27 and 28, 33 and 34 in township 152, range 87 in said Ward county, meet, thence due west on the section line, two miles to the Mountrail county line. . . ."

It appears that in the year previous the board of county commissioners had made a similar request to the state highway commission as then constituted and to the United States Bureau of Public Works and both these departments had approved this route as designated. The board of county commissioners spent some money in surveying the highway, securing the right of way, etc. and practically had complied with the requirements then in force. In April 1928 the Department of state highways made certain changes in state highway 23 so it would pass through the southern part of Ward county and, instead of having the route begin at the point on highway 6 originally intended, relocated and redesignated it as beginning at a point about 8 miles north therefrom, then due west through the county of Ward to that point west of Plaza in Mountrail county which would be due north from the town of Parshall, in Mountrail county. At the time the department decided to redesignate and relocate this portion of highway 23 the county commissioners of Ward county had not requested the change nor consented to it. Neither had the department in its departmental budget or construction program for the year 1928 made provision for the construction of this portion of highway 23 as redesignated, but had made provision and included in the proposed construction work that portion previously designated. In April 1928 the board of county

commissioners of Ward county adopted a resolution Exhibit "B" requesting the department of state highways to "proceed with the preparation of surveys, plans, specifications and estimates required for the following described state highway improvement: · The local· name of road 23. . . . Beginning at NE corner of Sec. 4–152–83, Due West 18 miles. Ending at NW corner of sec. 3–152–86."

The resolution requested the department to take all necessary steps in co-operation with the United States in order to obtain federal aid, requested the state highway commission to appropriate a sufficient amount of state aid to pay for 25 per cent of the road, and agreed that Ward county would pay 25 per cent of the total cost of construction. This resolution was recommended for approval by A. D. McKinnon, project engineer, and was approved by the State highway commission on June 21, 1928. Earlier in April of the same year the board ·of county commissioners of Ward county had adopted a resolution·to the effect that the board had been informed the state highway commission had designated as part of highway 23 that strip beginning in township 151, range 83 and running due west or·westerly through Ryder, and to the western boundary of Ward county and that the department of state highways had now designated "as a state highway No. 23 to begin at the northeast corner of section 4, township 152, range 83 running due west to the southwest corner of section 31, township 153, range 87" and that the board approved of this new designation, "provided however, that the state highway commission will .designate the road first mentioned on this resolution, or the road through the village of Douglas." Just how this route running through the village of Douglas would affect the relocation is difficult to see because it was not on the original location.

Section 9 of the Act requires the department to make a statement of the estimated cost of the portion of the highway to be constructed and provides how the.state highway commission shall "proceed to advertise for bids for contracts at such time as it may elect, and in the manner and for the purposes hereinafter provided." In this case the Commission advertised for bids for the construction of· the portion of the highway as relocated and redesignated, and this resolution of approval, made by the county commissioners, was adopted between the date of the last publication and the day for opening the bids. It is

admitted by the defendants that the state highway commission proceeded to advertise for bids for the construction of the highway as relocated without first consulting the county commissioners or submitting any estimated statement of cost; but before the resolution was adopted the commission had presented to the board the statement of the estimated cost. It is not contended that the cost of construction of this portion of the highway 23 in dispute will, together with other construction work included in the construction program of the department of state highways, exceed "the total estimated income or allowance granted or set aside for construction purposes in the departmental budget."

It is the contention of the plaintiffs that this proposed change which would put highway 23 about 8 miles north of the first designation was made by the department of state highways without the knowledge or consent of the county of Ward; that it was beyond the powers of the department to make such a change in highway 23 without the consent of Ward county and without providing for it in the departmental budget and that the subsequent act of the board of county commissioners of Ward county in approving the change did not cure any error heretofore existing.

It is the purpose of chapter 159 of the Session Laws 1927, creating the department of state highways, to vest "exclusively and solely" in this department "the designation, the location, creation and determination of all such roads, highways and thoroughfares which shall be and constitute part of the State Highway System," and further that "all roads and highways heretofore designated, improved and constructed by the State Highway Department shall be continued and construed as part of the State Highway System." See § 2 of the act. It is admitted that highway 23 was designated and was part of the highway system prior to the adoption of this act. The highway runs through the State and its general outline had been planned. Under the course of its construction it might become necessary to make changes here and there in various portions of the State; nevertheless the highway, even with these changes would still be highway 23. The department of state highways is invested with "full power and authority to designate, locate and create new and additional roads, highways, and thoroughfares, provided, however that the mileage of all such state highways.

shall not exceed" 7,500 miles in length. See § 2 of the act. Subdivision 3 of § 4 of the act gives the department of state highways the power "to designate, redesignate, layout, locate and relocate, alter, amend, revise any road and parcel of such state highway system notwithstanding that the same may have been at any time used improved and maintained as a state road." It is clear therefore this department has the exclusive right to locate portions of the highway and relocate portions of it. This power is not limited by any action on the part of the boards of county commissioners, hence the department had the right to change highway 23 as originally planned in its course through the southern part of Ward county, from the part which we call the southern location to the new strip running north of the original location and which we call the northern location. Highway 23 therefore as redesignated and relocated runs on the northern location instead of the southern.

The contention of the plaintiffs that this relocation was made without providing in the budget for its construction is without merit. The highway department had determined to construct highway 23 as it ran through Ward county, had provided for the construction in the budget, and this budget allowance is applicable to either the northern or the southern route. We must remember that it is still highway 23, whether it runs over the northern or southern route.

The plaintiffs, in their complaint, allege that the northern route runs through a sparsely settled country and one poorly fitted for a highway; that it does not accommodate as many people in Ward county as the southern route, and make other allegations which are directed toward the wisdom of the selection, with this feature however the courts have nothing to do. It is the business of the department of state highways to locate these highways. The location is made from a state standpoint and not local. It is quite possible portions of a highway will run through sparsely settled districts, but the department is vested with the power and authority to determine the state highway system. It is not controlled by local predelictions or advantages. It is a matter of common knowledge that through highways pass many organized towns and villages at some distance from these towns or villages. The question of whether the highway should go through a town or village or should run at a distance therefrom is a matter to be

presented to the department and to the board of county commissioners who are required to provide for the county's share of the expense.

It is the contention of the plaintiffs however that under the provisions of § 22 of this act the state highway commission cannot proceed with the construction of a road until the board of county commissioners of a county shall first have applied for the construction of the portion of the highway which runs through that county; that this application on the part of the county commissioners, and the accompanying action on the part of the department of notification of approval, are prerequisites to any action on the part of the highway commission and to any action on the part of the county commissioners in the matter of the construction of the road. This section reads as follows:

"Whenever any board of county commissioners of any county shall decide that any road or roads in such county shall be improved or constructed under the provisions of this Act, said board shall make written application to the state highway commission or its successors for the improvement and construction thereof. If the state highway commission shall approve such application, it shall notify in writing the said board of county commissioners of such approval and at the same time of the cost of such improvement, including the cost of engineering, the purchase or acquirement of right of way and all other expenses, and the share or portion thereof which such county shall bear. Whenever the board of county commissioners aforesaid shall elect to proceed with such improvement, the said board shall adopt a resolution signifying such election and shall in such resolution set aside out of such funds as are or may become available to pay the county's share of the cost of such improvement, and shall instruct and direct the county auditor in such resolution, upon written demand of the state highway commission, to draw a warrant or warrants on the county treasurer in favor of the contractor for such amount or amounts as may be due him, not to exceed the county's share or such estimate, necessary to meet or pay the county's portion of such improvement during the process of such improvement and after a contract therefor has been awarded or the work done by force account, and also such additional warrants in such amount or amounts in favor of the department of state highways to reimburse it for the county's share of the cost of engineering and the acquisition of right of way. Such warrants shall be drawn by the

county treasurer upon the certificate of the Secretary of the state highway commission.

"Such election to proceed with an improvement aforesaid by the board of county commissioners shall be and constitute an agreement and contract with the state highway commission, and it shall be the mandatory duty of the board of county commissioners to provide sufficient funds in accordance with law to defray its share of the cost of such improvement, or levy sufficient taxes therefor; provided, however, that construction on such improvement shall be commenced within one year."

The purpose of this section is to bind the county to a portion of the expense. This is done through action of the board of county commissioners. As we have seen no action on the part of county commissioners is necessary to enable the department of state highways to designate, locate, redesignate or relocate any state highway. Therefore there is no merit in the contention of the plaintiffs that this action on the part of the board of county commissioners is a necessary prerequisite to any action on the part of the department of state highways.

The next point raised is that even if the department of state highways has the right to locate and construct a highway yet all of the provisions required of the county commissioners under § 22 of the act must first be adopted before the department of state highways can proceed to locate and construct this portion of the highway and have the county charged with a portion of the cost, that if this be not done beforehand subsequent action on the part of the county commissioners does not cure the omission. The provisions of § 22 of the act are intended as authority for the board of county commissioners to pledge the county to its share of the improvement whenever the board of county commissioners elects by its resolution to proceed with such improvement. This amounts to an agreement and contract with the state highway commission. The board of county commissioners of Ward county did adopt such resolution. As we have pointed out it was not necessary to have this resolution before the state highway commission could proceed to locate the highway. It was deemed necessary however before Ward county could be charged. Doubtless the department would not have commenced construction until the county consented. The consent could be given any time. It must be remembered consent had

been given for the southern location, and the route thus established. The department decided to make a change of location for a few miles of this highway No. 23, and the board of county commissioners, by this resolution agreed to pay 25 per cent of the cost so that work could be done. We need not decide whether it is necessary to have the board of county commissioners adopt a new resolution every time a slight change is made in the location of the highway or whether after the road in general is routed and agreed to by the county changes may be made by the department without consulting the county. In this case the board did consent to the change. The board of county commissioners having agreed to proceed with the improvement as relocated and having pledged Ward county to pay its share of the improvement the contract with the department of state highways was complete.

The action of the trial court in refusing to enjoin the state highway commission from proceeding with the construction is affirmed; but that portion of the order which enjoins the county commissioners from contributing toward the expense is reversed. With this modification the order of the district court is affirmed.

BURKE, Ch. J., and NUESSLE, BIRDZELL, and CHRISTIANSON, JJ., concur.